## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEXON AMERICA INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| UNILOC 2017 LLC, UNILOC USA, INC., | ) | **DEMAND FOR JURY TRIAL** |
| AND UNILOC LUXEMBOURG, S.A., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, UNPATENTABILITY AND INVALIDITY OF PATENTS

Plaintiff Nexon America Inc. ("Nexon") hereby alleges as follows for this complaint against Uniloc 2017 LLC, Uniloc USA, Inc., and Uniloc Luxembourg, S.A. (collectively "Uniloc"):

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment of non-infringement, unpatentability and invalidity of U.S. Patent Nos. 6,324,578 (the "'578 Patent"); 7,069,293 (the "'293 Patent"); 6,510,466 (the "'466 Patent"); 6,728,766 (the "'766 Patent"); 6,110,228 (the "'228 Patent"); and 6,564,229 (the "'229 Patent") (collectively the "patents-in-suit") arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, including Title 35, United States Code.  Uniloc has asserted rights based on certain ongoing activity by Nexon, and Nexon contends that it has the right to engage in this activity without further license. Nexon thus seeks a declaration that it does not infringe the patents-in-suit and that the patents-in-suit claim no patentable subject matter and are invalid.  An actual, substantial, and continuing justiciable controversy exists between Nexon and Uniloc.

## THE PARTIES

2.      Plaintiff Nexon is a corporation organized under the laws of Delaware, having a principal place of business at 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245.

3.      Uniloc USA, Inc. ("Uniloc USA") is a Texas corporation that claims to have a principal place of business at Legacy Town Center I, Suite 380, 7160 Dallas Parkway, Plano, Texas 75024.

4.      Uniloc Luxembourg S.A. ("Uniloc Luxembourg") is a Luxembourg public limited liability company that claims to have a principal place of business at 15, Rue Edward Steichen, 4th Floor, L-2540, Luxembourg (R.C.S. Luxembourg B159161).

5.      Uniloc 2017 LLC ("Uniloc 2017") is a Delaware corporation that claims to have a principal place of business at 1209 Orange Street, Wilmington, Delaware 19801.

## SUBJECT MATTER JURISDICTION

6.      This is a civil action regarding allegations of patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, in which Nexon seeks declaratory relief under the Declaratory Judgment Act.  Thus, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.  This action includes a claim for a declaratory judgment of patent non-infringement, unpatentable subject matter, and invalidity arising under the patent laws of the United States, Title 35 of the United States Code.

7.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq.

8.      An actual controversy exists between Nexon and Uniloc given Uniloc's assertion that Nexon infringes the patents-in-suit by certain ongoing activity by Nexon.

9.      Nexon contends that it has a right to engage in making, using, offering to sell, and selling its products, without further license from Uniloc.

## PERSONAL JURISDICTION AND VENUE

10.      This Court has personal jurisdiction over Uniloc USA.  Uniloc USA is engaged primarily in the business of patent licensing.  Upon information and belief, Uniloc USA engaged in substantial licensing negotiations with entities who are Delaware corporations, and Uniloc USA has at least 90 patent licensees who are Delaware corporations.

11.      This Court also has personal jurisdiction over Uniloc Luxembourg.  Uniloc Luxembourg, along with Uniloc USA, is primarily engaged in the business of patent licensing.  Upon information and belief, Uniloc Luxembourg has engaged in extensive licensing negotiations with entities who are Delaware corporations, and has at least 90 patent licensees in this District.

12.      This Court also has personal jurisdiction over Uniloc 2017 LLC.  Uniloc 2017, along with Uniloc USA and Luxembourg, is primarily engaged in the business of patent licensing.  Uniloc 2017 has claimed to be the successor in interest to certain rights held by the other Uniloc entities, and thus would have licensees in this district.  Since becoming the successor in interest to certain patent rights, upon information and belief, Uniloc 2017 has negotiated licenses with Delaware entities.

13.      Uniloc USA, Uniloc Luxembourg and Uniloc 2017 have also repeatedly availed themselves of the benefits of this forum, asserting several patents, including those asserted against Nexon, in the District of Delaware, as shown below:

| Case No. | Case Name | U.S. Patents in Suit |
|---|---|---|
| 1:2017cv00822 | Uniloc USA, Inc. et al v. Cornerstone OnDemand, Inc. | 6,324,578 7,069,293 6,510,466 6,728,766 |
| 1:2017cv01526 | Uniloc USA, Inc. et al v. Motorola Mobility, LLC | 6,661,203 |
| 1:2017cv01527 | Uniloc USA, Inc. et al v. Motorola Mobility, LLC | 6,580,422 |
| 1:2017cv01552 | Uniloc USA, Inc. et al v. Peel Technologies, Inc. | 6,622,018 |
| 1:2017cv01656 | Uniloc USA, Inc. et al v. Wink Labs, Inc. | 6,622,018 |
| 1:2017cv01657 | Uniloc USA, Inc. et al v. Motorola Mobility, LLC | 6,622,018 |
| 1:2017cv01658 | Uniloc USA, Inc. et al v. Motorola Mobility, LLC | 6,161,134 |
| 1:2018cv01230 | Uniloc USA, Inc. et al v. Motorola Mobility, LLC | 6,836,654 |
| 1:2018cv01840 | Uniloc 2017 LLC v. Motorola Mobility, LLC | 6,993,049 |
| 1:2018cv01841 | Uniloc 2017 LLC v. Motorola Mobility, LLC | 6,868,079 |
| 1:2018cv01842 | Uniloc 2017 LLC v. Motorola Mobility, LLC | 7,020,106 |
| 1:2018cv01843 | Uniloc 2017 LLC v. Motorola Mobility, LLC | 7,167,487 |
| 1:2018cv01844 | Uniloc 2017 LLC v. Motorola Mobility, LLC | 6,836,654 |
| 1:2019cv00179 | Uniloc 2017 LLC v. Bitmovin, Inc. | 6,628,712 6,895,118 6,519,005 6,470,345 |

| Case No. | Case Name | U.S. Patents in Suit |
|---|---|---|
| 1:2019cv00180 | Uniloc 2017 LLC v. Brightcove Inc. et al | 6,470,345<br>6,628,712<br>6,895,118<br>6,519,005 |
| 1:2019cv00181 | Uniloc 2017 LLC v. Dailymotion, Inc. et al | 6,519,005<br>6,895,118<br>9,721,273 |
| 1:2019cv00182 | Uniloc 2017 LLC v. Telestream LLC | 6,628,712<br>6,895,118<br>6,519,005 |
| 1:2019cv00183 | Uniloc 2017 LLC v. Vudu, Inc. | 8,407,609<br>6,895,118<br>6,519,005 |

14.     In addition, in the Eastern District of Texas, Uniloc USA and Uniloc Luxembourg asserted the '578 Patent, '466 Patent, '766 Patent and '293 Patent against Delaware Incorporated entities:

| Case No. | Case Name |
|---|---|
| 2:2016cv01193 | Uniloc USA, Inc. et al v. Nutanix, Inc. |
| 2:2016cv01316 | Uniloc USA, Inc. et al v. Paychex, Inc. |
| 2:2017cv00173 | Uniloc USA, Inc. et al v. Box, Inc. |
| 2:2017cv00174 | Uniloc USA, Inc. et al v. Nutanix, Inc. |
| 2:2017cv00176 | Uniloc USA, Inc. et al v. Zendesk, Inc. |

| Case No. | Case Name |
|---|---|
| 2:2017cv00214 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00224 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00228 | Uniloc USA, Inc. et al v. Amazon.com, Inc. et al |
| 2:2017cv00231 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00258 | Uniloc USA, Inc. et al v. Apple Inc. |
| 2:2017cv00275 | Uniloc USA, Inc. et al v. Riot Games, Inc. |
| 2:2017cv00276 | Uniloc USA, Inc. et al v. Nexon America, Inc. |
| 2:2017cv00281 | Uniloc USA, Inc. et al v. Nexon America, Inc. |
| 2:2017cv00284 | Uniloc USA, Inc. et al v. Riot Games, Inc. |
| 2:2017cv00354 | Uniloc USA, Inc. et al v. RingCentral, Inc. |
| 2:2017cv00355 | Uniloc USA, Inc. et al v. RingCentral, Inc. |
| 2:2017cv00370 | Uniloc USA, Inc. et al v. Infor, Inc. |
| 2:2017cv00375 | Uniloc USA, Inc. et al v. Akamai Technologies, Inc. |
| 2:2017cv00376 | Uniloc USA, Inc. et al v. Infor, Inc. |
| 2:2017cv00405 | Uniloc USA, Inc. et al v. Akamai Technologies, Inc. |
| 2:2017cv00407 | Uniloc USA, Inc. et al v. Athenahealth, Inc. |
| 2:2017cv00409 | Uniloc USA, Inc. et al v. ZenPayroll, Inc. d/b/a Gusto |
| 2:2017cv00454 | Uniloc USA, Inc. et al v. Apple Inc. |

| Case No. | Case Name |
| --- | --- |
| 2:2017cv00455 | Uniloc USA, Inc. et al v. Apple Inc. |
| 2:2017cv00457 | Uniloc USA, Inc. et al v. Apple Inc. |
| 2:2017cv00465 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00466 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00467 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00469 | Uniloc USA, Inc. et al v. Apple Inc. |
| 2:2017cv00470 | Uniloc USA, Inc. et al v. Apple Inc. |
| 2:2017cv00708 | Uniloc USA, Inc. et al v. Apple Inc. |

15.     Of the Texas cases listed above, the following now have motions to dismiss for improper venue or to transfer to another venue pending:

| Case No. | Case Name |
| --- | --- |
| 2:2017cv00214 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00224 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00275 | Uniloc USA, Inc. et al v. Riot Games, Inc. |
| 2:2017cv00276 | Uniloc USA, Inc. et al v. Nexon America, Inc. |
| 2:2017cv00354 | Uniloc USA, Inc. et al v. RingCentral, Inc. |
| 2:2017cv00355 | Uniloc USA, Inc. et al v. RingCentral, Inc. |

| Case No. | Case Name |
| --- | --- |
| 2:2017cv00465 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00466 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00467 | Uniloc USA, Inc. et al v. Google, LLC |
| 2:2017cv00708 | Uniloc USA, Inc. et al v. Apple Inc. |

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), (c), and 1400 (b) because Uniloc 2017 LLC is a Delaware corporation, Uniloc Luxembourg is an alien entity and therefore subject to suit in any district, and Uniloc USA and Uniloc 2017 reside in this district.

## FACTUAL BACKGROUND

17.     Nexon is a pioneer in interactive entertainment software and is an industry leader in multiplayer online games.  Nexon develops, among other things, multiplayer online role-playing games that are widely popular in the United States.

18.     Uniloc is a patent-licensing company that neither makes nor sells any products or services.

19.     Uniloc Luxembourg has purported to be the owner, by assignment, the '578 Patent.  The '578 Patent, attached as Exhibit A, is incorporated by reference in its entirety, together with its file history.

20.     Uniloc USA has purported to be the exclusive licensee of the '578 Patent.

21.     Uniloc 2017 LLC purports to be the new owner, by assignment, of the '578 Patent and the sole owner of all rights to the '578 Patent.

22.     Uniloc Luxembourg has purported to be the owner, by assignment, of the '293 Patent.  The '293 Patent, attached as Exhibit B, is incorporated by reference in its entirety, together with its file history.

23.     Uniloc USA has purported to be the exclusive licensee of the '293 Patent.

24.     Uniloc 2017 LLC purports to be the new owner, by assignment, of the '293 Patent and the sole owner of all rights to the '293 Patent.

25.     Uniloc Luxembourg has purported to be the owner, by assignment, of the '466 Patent.  The '466 Patent, attached as Exhibit C, is incorporated by reference in its entirety, together with its file history.

26.     Uniloc USA has purported to be the exclusive licensee of the '466 Patent.

27.     Uniloc 2017 LLC purports to be the new owner, by assignment, of the '466 Patent and the sole owner of all rights to the '466 Patent.

28.     Uniloc Luxembourg has purported to be the owner, by assignment, of the '766 Patent.  The '766 Patent, attached as Exhibit D, is incorporated by reference in its entirety, together with its file history.

29.     Uniloc USA has purported to be the exclusive licensee of the '766 Patent.

30.     Uniloc 2017 LLC purports to be the new owner, by assignment, of the '766 Patent and the sole owner of all rights to the '766 Patent.

31.     Uniloc Luxembourg has purported to be the owner, by assignment, of the '228 Patent.  The '228 Patent, attached as Exhibit E, is incorporated by reference in its entirety, together with its file history.

32.     Uniloc USA has purported to be the exclusive licensee of the '228 Patent.

33.     Uniloc 2017 LLC purports to be the new owner, by assignment, of the '228 Patent and the sole owner of all rights to the '228 Patent.

34.     Uniloc Luxembourg has purported to be the owner, by assignment, of the '229 Patent.  The '229 Patent, attached as Exhibit F, is incorporated by reference in its entirety, together with its file history.

35.     Uniloc USA has purported to be the exclusive licensee of the '229 Patent.

36.     Uniloc 2017 LLC purports to be the new owner, by assignment, of the '229 Patent and the sole owner of all rights to the '229 Patent.

37.     On April 6, 2017, Uniloc filed suit against Nexon alleging infringement of the '228 and '229 Patents in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No. 2:17-cv-00276-JRG (E.D. Tex.).  That case was stayed before Nexon filed a responsive pleading. It will remain stayed pending resolution of an appeal before the Federal Circuit in *Uniloc USA, Inc. et al. v. Big Fish Games, Inc.*, Case No. 18-2186 (CAFC).

38.     On April 7, 2017, Uniloc filed suit against Nexon alleging infringement of the '466, '766, '293, and '578 Patents in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No. 2:17-cv-00281-RWS (E.D. Tex.).  That matter was dismissed without prejudice pursuant to Fed. R. Civ. P. 41, prior to Nexon filing a responsive pleading.  *Id.* at Dkt. No. 14.

39.     On March 13, 2019, Uniloc USA. and Uniloc Luxembourg filed a pleading with the U.S. Court of Appeals for the Federal Circuit in *Uniloc USA, Inc. et al. v Big Fish Games, Inc.*, Case No. 18-2186 (CAFC), taking the position that Uniloc 2017 could be joined to cure any standing defects in either that case on appeal or in any of the matters below:

| Case Name | Case Number | District | Date Filed |
|---|---|---|---|
| Uniloc USA, Inc. et al v. AVG Technologies USA, Inc. | 6:13-cv-00626 | ED Texas | 6-Sep-13 |
| Uniloc USA, Inc. et al v. Kaspersky Lab, Inc. | 6:13-cv-00795 | ED Texas | 18-Oct-13 |
| Uniloc USA, Inc. v. E-MDS, Inc. | 6:14-cv-00625 | ED Texas | 18-Jul-14 |
| Uniloc USA, Inc. et al v. Avaya Inc. | 6:15-cv-01168 | ED Texas | 28-Dec-15 |
| Uniloc USA, Inc. et al v. Facebook, Inc | 6:16-cv-00223 | ED Texas | 18-Mar-16 |
| Uniloc USA, Inc. et al v. WhatsApp, Inc. | 6:16-cv-00225 | ED Texas | 18-Mar-16 |
| Uniloc USA, Inc. et al v. AVG Technologies USA, Inc. et al. | 2:16-cv-00393 | ED Texas | 12-Apr-16 |
| Uniloc USA, Inc. et al v. Picis, Inc. | 6:16-cv-00465 | ED Texas | 27-May-16 |
| Uniloc USA, Inc. et al v. QuadraMed Corp. | 6:16-cv-00466 | ED Texas | 27-May-16 |
| Uniloc USA, Inc. et al v. N Harris Computer Corporation | 6:16-cv-00467 | ED Texas | 27-May-16 |
| Uniloc USA, Inc. et al. v OptumInsight, Inc. et al. | 6:16-cv-00468 | ED Texas | 27-May-16 |
| Uniloc USA, Inc. et al v. Netsmart Technologies, Inc. | 6:16-cv-00470 | ED Texas | 27-May-16 |
| Uniloc USA, Inc. et al v. Medical Information Technology, Inc. d/b/a Meditech | 6:16-cv-00463 | ED Texas | 27-May-16 |
| Uniloc USA, Inc. et al v. Google LLC | 2:16-cv-00566 | ED Texas | 28-May-16 |
| Uniloc USA, Inc. et al v. Apple Inc. | 2:16-cv-00638 | ED Texas | 14-Jun-16 |
| Uniloc USA, Inc. et al v. Samsung Electronics America, Inc. | 2:16-cv-00642 | ED Texas | 14-Jun-16 |
| Uniloc USA, Inc. et al v. WhatsApp, Inc. | 2:16-cv-00645 | ED Texas | 14-Jun-16 |
| Uniloc USA, Inc. et al v. Snap Inc. | 2:16-cv-00696 | ED Texas | 30-Jun-16 |
| Uniloc USA, Inc. et al v. Facebook, Inc. | 2:16-cv-00728 | ED Texas | 5-Jul-16 |

| Case Name | Case Number | District | Date Filed |
|---|---|---|---|
| Uniloc USA, Inc. et al v. Green Tomato Ltd. | 2:16-cv-00731 | ED Texas | 5-Jul-16 |
| Uniloc USA, Inc. et al. v. Sony Interactive Entertainment LLC | 2:16-cv-00732 | ED Texas | 5-Jul-16 |
| Uniloc USA, Inc. et al v. Avaya Inc. | 2:16-cv-00777 | ED Texas | 15-Jul-16 |
| Uniloc USA, Inc. et al v. Telegram Messenger, LLP | 2:16-cv-00892 | ED Texas | 11-Aug-16 |
| Uniloc USA, Inc. et al v. HTC America, Inc. | 2:16-cv-00989 | ED Texas | 6-Sep-16 |
| Uniloc USA, Inc. et al v. LG Electronics USA, Inc. | 2-l6-cv-00991 | ED Texas | 6-Sep-16 |
| Uniloc USA, Inc. et al v. Motorola Mobility LLC | 2:16-cv-00992 | ED Texas | 6-Sep-16 |
| Uniloc USA, Inc. et al v. ZTE (USA) Inc. et al | 2:16-cv-00993 | ED Texas | 6-Sep-16 |
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al | 2:16-cv-00994 | ED Texas | 6-Sep-16 |
| Uniloc USA, Inc. et al v. Google, LLC | 2:17-cv-00214 | ED Texas | 20-Mar-l7 |
| Uniloc USA, Inc. et al v. Google Inc. | 2:17-cv-00224 | ED Texas | 22-Mar-l7 |
| Uniloc USA, Inc. et al v. Amazon.com, Inc. et al. | 2:17-cv-00228 | ED Texas | 24-Mar-l7 |
| Uniloc USA, Inc. et al v. Google, LLC | 2:17-cv-00231 | ED Texas | 26-Mar-l7 |
| Uniloc USA, Inc. et al v. Cisco Systems, Inc. | 2:17-cv-00527 | WD Wash. | 4-Apr-17 |
| Uniloc USA, Inc. et al v. Riot Games, Inc. | 2:17-cv-00275 | ED Texas | 6-Apr-17 |
| Uniloc USA, Inc. et al v. Nexon America, Inc. | 2:17-cv-00276 | ED Texas | 6-Apr-17 |
| Uniloc USA, Inc. et al v. Square Enix, Inc. | 2:17-cv-00302 | ED Texas | 12-Apr-l7 |
| Uniloc USA, Inc. et al v. Kik Interactive, Inc. | 2:17-cv-00346 | ED Texas | 21-Apr-l7 |
| Uniloc USA, Inc. et al v. Kik Interactive, Inc. | 2:17-cv-00347 | ED Texas | 21-Apr-l7 |
| Uniloc USA, Inc. et al v. Hike Ltd. | 2:17-cv-00348 | ED Texas | 21-Apr-l7 |

| Case Name | Case Number | District | Date Filed |
|---|---|---|---|
| Uniloc USA, Inc. et al v. Hike Ltd. | 2:17-cv-00349 | ED Texas | 21-Apr-l7 |
| Uniloc USA, Inc. et al v. RingCentral, Inc. | 2:17-cv-00354 | ED Texas | 25-Apr-l7 |
| Uniloc USA, Inc. et al v. RingCentral, Inc. | 2:17-cv-00355 | ED Texas | 25-Apr-l7 |
| Uniloc USA, Inc. v. Picis, Inc. (original case no. before consolidation, 6-l 6-cv-00465) | 6:16-cv-00463 | ED Texas | 15-May-17 |
| Uniloc USA, Inc. et al v. Google Inc. | 2:17-cv-00465 | ED Texas | l-Jun-17 |
| Uniloc USA, Inc. et al v. Google Inc. | 2:17-cv-00466 | ED Texas | l-Jun-17 |
| Uniloc USA, Inc. et al v. Google Inc. | 2:17-cv-00467 | ED Texas | l-Jun-17 |
| Nutanix, Inc. v. Uniloc USA, Inc. et al | 4:17-cv-03181 | ND Cal. | 2-Jun-17 |
| Uniloc USA, Inc. et al v. Hike Ltd. | 2:17-cv-00475 | ED Texas | 6-Jun-17 |
| Uniloc USA, Inc. et al v. Hike Ltd. | 2:17-cv-00476 | ED Texas | 6-Jun-17 |
| Uniloc USA, Inc. et al v. Kik Interactive, Inc. | 2:17-cv-00481 | ED Texas | 7-Jun-17 |
| Uniloc USA, Inc. et al v. Kik Interactive, Inc. | 2:17-cv-00483 | ED Texas | 7-Jun-17 |
| Riot Games, Inc. v. Uniloc USA, Inc. et al | 8:17-cv-01050 | CD Cal. | 15-Jun-l7 |
| Uniloc USA, Inc. v. Picis, Inc. (appealed from ED Tex. 6-16-cv-00463, filed on 5/15/17) | 17-2171 | CA Fed. Cir. | 16-Jun-l7 |
| Uniloc USA, Inc. et al v. Blackboard, Inc. | 1:17-cv-00753 | WD Tex. | 11-Aug-17 |
| Uniloc USA, Inc. et al v. Infor, Inc. | 3:17-cv-02119 | ND Texas | 11-Aug-17 |
| Amazon.com, Inc. et al v. Uniloc USA, Inc. et al | 2:17-cv-01307 | WAWD | 29-Aug-l7 |
| Uniloc USA, Inc. et al v. Samsung Electronics America, Inc. et al | 2:17-cv-00650 | ED Texas | 15-Sep-17 |
| Uniloc USA, Inc. et al v. Samsung Electronics America, Inc. et al | 2:17-cv-00651 | ED Texas | 15-Sep-17 |
| Uniloc USA, Inc. et al v. Samsung Electronics America, Inc. et al | 2:17-cv-00652 | ED Texas | 15-Sep-17 |

| Case Name | Case Number | District | Date Filed |
|---|---|---|---|
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al. | 2:17-cv-00707 | ED Texas | 20-Oct-l7 |
| Uniloc USA, Inc. et al v. Apple Inc. | 2:17-cv-00708 | ED Texas | 20-Oct-l7 |
| Uniloc USA, Inc. et al v. HTC America, Inc. | 2:17-cv-01558 | WD Wash. | 20-Oct-l7 |
| Uniloc USA, Inc. et al v. Exclusive Group LLC d/b/a Binatone North America | 1:17-cv-03962 | SD Indiana | 27-Oct-l7 |
| Uniloc USA, Inc. v. ADP, LLC et al (appealed from ED Tex. 2-16-cv-00393, filed on 4/12/16) (appeal consolidated with Appeal No. 18-1448) | 18-1132 | CA Fed. Cir. | l-Nov-17 |
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al | 2:17-cv-00736 | ED Texas | 9-Nov-17 |
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al | 2:17-cv-00737 | ED Texas | 9-Nov-17 |
| Uniloc USA, Inc. et al v. Motorola Mobility, LLC | 1:17-cv-01658 | Delaware | 15-Nov-l7 |
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al. | 2:17-cv-00746 | ED Texas | 16-Nov-l7 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 3:18-cv-00360 | ND Cal. | l7-Jan-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 3:18-cv-00365 | ND Cal. | l7-Jan-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 4:18-cv-00361 | ND Cal. | l7-Jan-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 4:18-cv-00362 | ND Cal. | l7-Jan-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 4:18-cv-00364 | ND Cal. | l7-Jan-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 5:18-cv-00357 | ND Cal. | l7-Jan-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 3:18-cv-00358 | ND Cal. | l7-Jan-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 3:18-cv-00363 | ND Cal. | 18-Jan-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 3:18-cv-00572 | ND Cal. | 26-Jan-18 |

| Case Name | Case Number | District | Date Filed |
|---|---|---|---|
| Uniloc USA, Inc. et al. v. Apple Inc. | 1:18-cv-00158 | WD Texas | 22-Feb-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 1:18-cv-00159 | WD Texas | 22-Feb-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 1:18-cv-00161 | WD Texas | 22-Feb-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 1:18-cv-00163 | WD Texas | 22-Feb-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 1:18-cv-00164 | WD Texas | 22-Feb-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 1:18-cv-00166 | WD Texas | 22-Feb-18 |
| Uniloc USA, Inc. et al. v. Samsung Electronics America, Inc. et al | 2:18-cv-00040 | ED Texas | 23-Feb-18 |
| Uniloc USA, Inc. et al. v. Samsung Electronics America, Inc. et al | 2:18-cv-00041 | ED Texas | 23-Feb-18 |
| Uniloc USA, Inc. et al. v. Samsung Electronics America, Inc. et al | 2:18-cv-00042 | ED Texas | 23-Feb-18 |
| Uniloc USA, Inc. et al. v. Samsung Electronics America, Inc. et al | 2:18-cv-00044 | ED Texas | 23-Feb-18 |
| Uniloc USA, Inc. et al. v. Logitech Inc. et al. | 5:18-cv-01304 | ND Cal. | 28-Feb-18 |
| Uniloc USA, Inc., et al v. LG Electronics USA, Inc. et al. | 3:18-cv-00557 | ND Texas | 9-Mar-18 |
| Uniloc USA, Inc., et al v. LG Electronics USA, Inc. et al. | 3:18-cv-00559 | ND Texas | 9-Mar-18 |
| Uniloc USA, Inc., et al v. LG Electronics USA, Inc. et al. | 3:18-cv-00560 | ND Texas | 9-Mar-18 |
| Uniloc USA, Inc., et al v. LG Electronics USA, Inc. et al. | 3:18-cv-00561 | ND Texas | 9-Mar-18 |
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al. | 2:18-cv-00072 | ED Texas | 13-Mar-18 |
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al. | 2:18-cv-00073 | ED Texas | 13-Mar-18 |

| Case Name | Case Number | District | Date Filed |
|-----------|-------------|----------|------------|
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al. | 2:18-cv-00074 | ED Texas | 13-Mar-18 |
| Uniloc USA, Inc. et al v. Huawei Device USA, Inc. et al. | 2:18-cv-00075 | ED Texas | 13-Mar-18 |
| Uniloc USA, Inc. et al. v. Amazon.com, Inc. | 2:18-cv-00080 | ED Texas | 15-Mar-18 |
| Uniloc USA, Inc. et al. v. Amazon.com, Inc. | 2:18-cv-00081 | ED Texas | 16-Mar-18 |
| Uniloc Luxembourg SA et al. v. Amazon.com, Inc. | 2:18-cv-00091 | ED Texas | 22-Mar-18 |
| Uniloc Luxembourg SA et al. v. Amazon.com, Inc. | 2:18-cv-00092 | ED Texas | 22-Mar-18 |
| Uniloc USA, Inc. et al. v. Amazon.com, Inc. | 2:18-cv-00123 | ED Texas | 3l-Mar-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. | 1:18-cv-00293 | WD Texas | 9-Apr-18 |
| Uniloc USA, Inc. et al. v. Ubisoft, Inc. | 3:18-cv-02375 | ND Cal. | 19-Apr-18 |
| Uniloc USA, Inc. v. E-MDS, Inc. (appealed from ED Tex. 6-14-cv-00625, filed on 7/18/14 | 18-1893 | CA Fed. Cir. | 27-Apr-18 |
| Uniloc USA, Inc. et al. v. Apple Inc. (appealed from ND Cal. 3-18-cv-00358, filed on 1/17/18) | 18-2094 | CA Fed. Cir. | 20-Jun-l8 |

40.     Section 1400(b) of Title 35 states that "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

41.     On May 22, 2017, the Supreme Court of the United States announced its decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), holding that "[a]s applied to domestic corporations, 'reside[nce]' in [28 U.S.C.] § 1400(b) refers only to the State of incorporation."  *Id.* at 1521.

42.    Nexon is not incorporated in the State of Texas, nor does it have a regular and established place of business in the Eastern District of Texas.  Consequently, venue is improper in the Eastern District of Texas in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No. 2:17-cv-00276-JRG (E.D. Tex.), and *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No. 2:17-cv-00281-RWS (E.D. Tex.).  *See Uniloc USA, Inc., et al. v. Nutanix, Inc.*, Case No. 2:17-cv-00174-RWS (E.D. Tex.)  (dismissing case due to improper venue where defendant did not reside in Texas and had no established place of business in Texas); that matter is now proceeding in the Northern District of California.

43.    Upon information and belief, Uniloc has granted a license to certain of the patents-in-suit to one or more third parties that provide supporting technology to Nexon.  For example, on July 8, 2016, Uniloc filed suit against Valve in *Uniloc USA, Inc., et. al. v. Valve Corporation*, Case No. 2:16-cv-00746-JRG (E.D. Tex.), asserting the '578 Patent, the '293 Patent, the '466 Patent and the '766 Patent.  On December 22, 2016, the parties stipulated to dismissal with prejudice of all claims by Uniloc against Valve pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and (ii).  *Id.* at Dkt. 39.  This course of events often indicates that a license has been taken.  If Uniloc agreed to license certain of the patents-in-suit to Valve, any alleged infringing activity by Nexon involving use of Valve's technology is likely licensed.  In addition, where there has been the grant of such a license, patent exhaustion applies to downstream uses of technology that are in whole or material part the subject of a licensed claim.

44.    Nexon does not infringe any patentable and valid claim of the patents-in-suit or any other patent identified by Uniloc.  Accordingly, an actual and justiciable controversy exists between Nexon and Uniloc as to whether Nexon infringes any valid and patentable claim of the patents-in-suit.  Absent a declaration of non-infringement, invalidity, unpatentability, or release

of all claims regarding the patents-in-suit, Uniloc will continue to wrongly assert the patents-in-suit against Nexon, and thereby cause Nexon irreparable harm.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '578 Patent)

45.     Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

46.     Uniloc alleges, in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No. 2:17-cv-00281-RWS (E.D. Tex.), that Nexon infringes one or more claims of the '578 Patent. Nexon incorporates by reference in its entirety the content of that Complaint, which is facially deficient in that it fails to articulate a factual basis for Uniloc's infringement contentions. Among other things, it does not even purport to map Nexon's product to any elements of any asserted claim of the '578 Patent, making only a conclusory allegation of infringement.  In addition, it levies facially defective allegations of liability under the doctrine of equivalents that rest on claim scope surrendered during patent prosecution and improperly captures material in the prior art.

47.     Nexon asserts that it does not infringe or contribute to any infringement of any claim of the '578 Patent either literally or under the doctrine of equivalents.  Nexon further asserts that it has not and does not induce any infringement of any claim of the '578 Patent.

48.     The '578 Patent is directed to obtaining user and administrator sets of configuration preferences for applications and then executing the applications using both sets of obtained preferences.  *See* '578 Patent at 3:40–45.

49.     Nexon does not directly, indirectly, literally or under the doctrine of equivalents, infringe the '578 Patent.  For example, and without waiver of additional distinctions, Claim 1

requires "installing an application program having a plurality of configurable preferences and a plurality of authorized users on a server coupled to the network." Nexon does not store games (i.e., "application programs") for distribution to users on Nexon servers in the manner disclosed in Clam 1. Nexon's products also do not specify any "configurable preferences" as is required by Claim 1. Claim 1 further requires "an application launcher program associated with the application program." Nexon does not provide such application launchers.

50.     Therefore, there exists a substantial controversy between Nexon and Uniloc and the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Nexon has not infringed any claim of the '578 Patent.

51.     An actual and justiciable controversy exists regarding the alleged infringement of the '578 Patent by Nexon. Nexon accordingly requests a judicial determination of its rights, duties, and obligations regarding the '578 Patent.

52.     A judicial declaration is necessary and appropriate so that Nexon may ascertain its rights regarding the '578 Patent.

## SECOND CAUSE OF ACTION

### (Declaratory Judgement of Invalidity of the '578 Patent)

53.     Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

54.     Upon information and belief, Uniloc contends all claims of the '578 Patent are valid.

55.     All claims of the '578 Patent are invalid for failure to comply with one or more of the conditions for patentability and validity set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

56.     The '578 Patent does not claim patent-eligible subject matter under 35 U.S.C.

§ 101.  The '578 Patent does not describe any new solution, system or device.  Its claims are

directed to the abstract idea of combining user and administrator preferences, and neither the

claims nor the specification recite any technological inventive concept to transform that abstract

idea into a patent-eligible application.  In fact, in *Uniloc USA et al. v. ADP, LLC et al.*, Case

No. 2:16-cv-00741-RWS (E.D. Tex.) Dkt. No. 267 at 25, the district court found claims 1–8,

10-39, and 41–46 of the '578 Patent to be "drawn to ineligible subject matter and, therefore,

invalid."  The claims describe generic computer components without modification and are overly

vague without claiming any particular way of programming or designing the software or

components to facilitate execution of the limitations of claims.  The '578 Patent is directed to

patent-ineligible subject matter.

57.     The '578 Patent is also invalid under 35 U.S.C. § 112 for failing to provide an

enabling disclosure or adequate written description supporting its claims, as it provides no

special programming algorithm, or technology for implementing the limitations of the claims nor

does it disclose the requisite structures for its numerous means-plus-function claim limitations.

58.     If the claims are of the scope asserted by Uniloc, then the '578 Patent is also

invalid as anticipated or rendered obvious under 35 U.S.C. §§ 102 and/or 103, in light of the

prior art including, for example U.S. Patent No. 6,115,040 to Bladow (the "'040 Patent"),

including its inherent teachings and the admitted prior art.

59.     The '040 Patent to Bladow, et al., titled "Graphical User Interface for Web

Enabled Applications," was filed on September 24, 1998.  The lead inventor, Char R. Bladow, of

Colorado Springs, Colorado, assigned the patent to MCI Communications Corporation,

Washington, D.C.

60.     The '040 Patent either anticipates or renders obvious the claims of the '578

Patent.  For example the "method for management of configurable application programs on a

network" required by Claim 1 of the '578 Patent is found in the '040 Patent teaching that "[a]

backplane architecture controls and manages the user interfaces by instantiating, launching,

overseeing and closing the user interfaces associated with a plurality of applications residing in a

remote server," which "provides a single uniform user authentication procedure during logon for

the user interfaces and also provides session management for a duration of a user session."  *See*

'040 Patent at Abstract.  The '040 Patent also discloses "installing an application program having

a plurality of configurable preferences and a plurality of authorized users on a server coupled to

the network" as is required by Claim 1 of the '578 Patent, teaching "one or more backplane

service objects for managing sessions, one or more presentation services objects for the

presentation of customer options and customer requested data in a browser recognizable format"

as well as that a "second or middle tier 16, is provided having secure web servers and back-end

services to provide applications that establish user sessions, govern user authentication and their

entitlements, and communicate with adaptor programs to simplify the interchange of data across

the network."  *See* '040 Patent at 5:35-6:16.  The '040 Patent also discloses "distributing an

application launcher program associated with the application program to a client coupled to the

network" as is required by Claim 1 of the '578 Patent, teaching that "StarOE is an authentication

and entitlement system handling the 'networkMCI Interact' logon authentication and user

entitlements for customer sessions.  At the initiation of the customer sessions and also

throughout the duration the sessions, all the application services communicate with the StarOE

for customer authentication and entitlements."  *See* '040 Patent at 15:49-67.  The '040 Patent

discloses "obtaining a user set of the plurality of configurable preferences associated with one of

the plurality of authorized users executing the application launcher program," and "obtaining an administrator set of the plurality of configurable preferences from an administrator" as required by Claim 1 of the '578 Patent, teaching that a "[a] common database may be maintained to hold the common configuration data which may be used by the GUI applications and by the mid-range servers. Such common data includes but are not limited to: customer security profiles, billing hierarchies for each customer, general reference data (states, NPA's, Country codes), and customer specific pick lists: e.g., ANI's, calling cards, etc." '040 Patent at 11:59-12:6.  The '040 Patent discloses "executing the application program using the obtained user set and the obtained administrator set of the plurality of configurable preferences responsive to a request from the one of the plurality of authorized users" as is required by Claim 1 of the '578 Patent, teaching that "[t]he logon page 230 typically includes name 232 and password 234 fields for user to enter. The logon page 230, in addition, may include hyper links 236 to other services such as product and service center, programs and promotions, and questions and answers concerning the system of the present invention. After the user is properly authenticated via the logon page 230, a home page is retrieved." *See* '040 Patent at 14:35-43.  The '040 Patent further discloses that "[a]fter determining the entitlements, the backplane initiates a new thread and starts an application toolbar in step 310. The application toolbar includes the remote services to which the user has subscribed and may select to run. From the application toolbar, a user is able to select a service to run. Upon user selection, the selection is communicated from the application toolbar to the backplane in steps 312, 314, which then launches the graphical user interface program associated with the selected service." *See id* at 18:48-65.  Accordingly, the '578 Patent is either anticipated or rendered obvious by the '040 patent.

61.     An actual and justiciable controversy exists between Nexon and Uniloc as to the invalidity of the claims of the '578 Patent.

62.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Nexon requests that this Court enter a judgment that all claims of the '578 Patent are invalid pursuant to Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD CAUSE OF ACTION

### (Declaratory Judgement of Non-Infringement of the '293 Patent)

63.     Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

64.     Uniloc alleges in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No. 2:17-cv-00281-RWS (E.D. Tex.), that Nexon infringes one or more claims of the '293 Patent. Nexon incorporates by reference in its entirety the content of that Complaint, which is facially deficient in that it fails to articulate a factual basis for Uniloc's infringement contentions. Among other things, it does not even purport to map Nexon's product to any elements of any asserted claim of the '293 Patent, making only a conclusory allegation of infringement.  In addition, it levies facially defective allegations of liability under the doctrine of equivalents that rest on claim scope surrendered during patent prosecution and improperly captures material in the prior art.

65.     Nexon asserts that it does not infringe or contribute to any infringement of any claim of the '293 Patent either literally or under the doctrine of equivalents.  Nexon further asserts that it has not and does not induce any infringement of any claim of the '293 Patent.

66.     The '293 Patent is directed to distributing applications to on-demand servers from a centralized network management server.  *See* '293 Patent at 3:58–4:13.

67.     Nexon does not directly, indirectly, literally or under the doctrine of equivalents, infringe the '293 Patent.  For example, and without waiver of additional distinctions, Claim 1 requires "providing an application program to be distributed to the network management server." Nexon does not provide games (i.e., "application programs") for distribution to other servers in the manner required by Claim 1.  Claim 1 further requires "preparing a file packet associated with the application program and including a segment configured to initiate registration operations for the application program at the target on-demand server."  Nexon does not prepare specialized file packets associated with games to initiate registration operations.  Claim 1 also requires that the method for distribution of application programs be executed on "a centralized network management server coupled to the network."  Nexon does not operate such a centralized management server.

68.     Therefore, there exists a substantial controversy between Nexon and Uniloc and the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Nexon has not infringed any claim of the '293 Patent.

69.     An actual and justiciable controversy exists regarding the alleged infringement of the '293 Patent by Nexon.  Nexon accordingly requests a judicial determination of its rights, duties, and obligations regarding the '293 Patent.

70.     A judicial declaration is necessary and appropriate so that Nexon may ascertain its rights regarding the '293 Patent.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgement of Invalidity of the '293 Patent)

71.     Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

72.     Upon information and belief, Uniloc contends all claims of the '293 Patent are valid.

73.     All claims of the '293 Patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

74.     The '293 Patent does not claim patent-eligible subject matter under 35 U.S.C. § 101.  The '293 Patent does not describe any new solution, system or device.  Its claims are directed to the abstract idea of distributing software over a network and neither the claims nor the specification recite any technological inventive concept to transform that abstract idea into a patent-eligible application.  In fact, in *Uniloc USA et al. v. ADP, LLC et al.*, Case No. 2:16-cv-00741-RWS (E.D. Tex.) Dkt. No. 267 at 25, the district court found claims 1, 12 and 17 of the '293 Patent to be "drawn to ineligible subject matter and, therefore, invalid."  The claims provide for the use of off-the-shelf components and simply enumerate conventional and necessary steps for distributing files over a network.  The '293 Patent is directed to patent-ineligible subject matter.

75.     The '293 Patent is also invalid under 35 U.S.C. § 112 for failing to provide an enabling disclosure or adequate written description supporting its claims, as it provides no special programming algorithm, or technology for implementing the limitations of the claims nor does it disclose the requisite structures for its numerous means-plus-function claim limitations.

76.     The '293 Patent is also invalid as anticipated or rendered obvious under 35 U.S.C. §§ 102 and/or 103, in light of the prior art including, for example U.S. Patent No. 5,845,090 to Collins, et al. (the "'090 Patent"), its inherent teachings, and the admitted prior art.

77.     The '090 Patent to Collins, titled "System for Software Distribution in a Digital Computer Network," was filed on September 30, 1996.  The lead inventor, Theodore Joseph Collins, III, of St. Paul, Minnesota, assigned the patent to Platinum Technology, Inc. of Oak Brook, Illinois.

78.     The '090 Patent either anticipates or renders obvious the claims of the '293 Patent.  For example the "method for distribution of application programs to a target on-demand server on a network executed on a centralized network management server coupled to the network" required by Claim 1 of the '293 Patent is found in the '090 Patent teaching of "[a] process of distributing software and data in a digital computer network by combining the software and data, together with programs and data known as methods, into single entities referred to as Packages, and then by using specific techniques to transmit Packages from one computer to another."  '090 Patent at Abstract.  The '090 Patent also discloses "providing an application program to be distributed to the network management server" as is required by Claim 1 of the '293 Patent, teaching "a means of distributing software in a digital computer network by using the network to transmit Software Packages. Software Packages are the fundamental unit of transfer in the present invention. Packages are transferred between a Network Management Server and Distribution Targets." *See* '090 Patent at 2:23-43.  The '090 Patent also discloses "specifying a source directory and a target directory for distribution of the application program" as is required by Claim 1 of the '293 Patent, teaching that a "Distribution Target receives Software Packages from the NMS, and sends a digital message to the Package to initiate the

installation" and "[a] Hop Server (4) is a digital computer which stores a Software Package and then forwards it to one or more Distribution Targets."  '090 Patent at 2:64-3:6; 3:16-26.  The '090 Patent discloses "preparing a file packet associated with the application program and including a segment configured to initiate registration operations for the application program at the target on-demand server" as is required by Claim 1 of the '293 Patent, teaching that "[a] Command Target (3) is another name for a Distribution Target when it receives and acts on a Command Package. Command Packages are identical to Distribution Packages, except that they contain a different set of methods. The methods contained in a Distribution Software Package act, among other things, to unpack data from the Software Package and install it on a Distribution Target. The methods contained in a Command Package, by contrast, act on data to perform a system administration function on the Command Target." *See* '090 Patent at 3:7-15. The '090 Patent also discloses "distributing the file packet to the target on-demand server to make the application program available for use by a user at a client" as is required by Claim 1 of the '293 Patent, teaching "a means of distributing software in a digital computer network by using the network to transmit Software Packages" which are "transferred between a Network Management Server and Distribution Targets."  '090 Patent at 2:23-43.  The '090 further discloses that "[o]nce a Software Package is scheduled for transmission via the internetwork to a target computer, group, or Profile, an indication is stored in the Outbound Package Queue (13). The Package Transfer Agent (16) program acts on this indication, and transfers the Package from the Central Package Archive (10) to the Target System, optionally through one or more Remote Distribution Servers." *See id.* at 5:35-49.

79.    An actual and justiciable controversy exists between Nexon and Uniloc as to the invalidity of the claims of the '293 Patent.

80.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*,

Nexon requests that this Court enter a judgment that all claims of the '293 Patent are invalid

pursuant to Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101,

102, 103, and/or 112.

**FIFTH CAUSE OF ACTION**

**(Declaratory Judgement of Non-Infringement of the '466 Patent)**

81.     Nexon incorporates by reference its allegations contained in each of the preceding

paragraphs of this Complaint as though fully set forth herein.

82.     Uniloc alleges in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No.

2:17-cv-00281-RWS (E.D. Tex.), that Nexon infringes one or more claims of the '466 Patent.

Nexon incorporates by reference in its entirety the content of that Complaint, which is facially

deficient in that it fails to articulate a factual basis for Uniloc's infringement contentions.

Among other things, it does not even purport to map Nexon's product to any elements of any

asserted claim of the '466 Patent, making only a conclusory allegation of infringement.  In

addition, it levies facially defective allegations of liability under the doctrine of equivalents that

rest on claim scope surrendered during patent prosecution and improperly captures material in

the prior art.

83.     Nexon asserts that it does not infringe or contribute to any infringement of any

claim of the '466 Patent either literally or under the doctrine of equivalents.  Nexon further

asserts that it has not and does not induce any infringement of any claim of the '466 Patent.

84.     The '466 Patent is directed to "application program management on a computer

network."  '466 Patent at 1:21–23.  The computer network includes a server supporting client

stations.  *See* '466 Patent at 3:47-50.  The claims broadly relate to installing multiple software at

a server; receiving a login request from a user's computer; displaying icons representing the installed software authorized for the user at the user's computer; receiving a selection of one of the displayed software; and providing a copy of the selected software to the user's computer for execution.

85.     Nexon does not directly, indirectly, literally or under the doctrine of equivalents, infringe the '466 Patent.  For example, and without waiver of additional distinctions, Claim 1 requires the "installing of a plurality of application programs at the server."  Nexon, however, does not store games (i.e., "application programs") for distribution to users on Nexon servers. Additionally, Nexon servers do not receive "a login request from a user at a client" as is required by Claim 1.  Claim 1 also requires that the server provide "an instance of the selected one of the plurality of application programs to the client for execution responsive to the selection," however Nexon does not provide instances of applications to clients.

86.     Therefore, there exists a substantial controversy between Nexon and Uniloc and the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Nexon has not infringed any claim of the '466 Patent.

87.     An actual and justiciable controversy exists regarding the alleged infringement of the '466 Patent by Nexon.  Nexon accordingly requests a judicial determination of its rights, duties, and obligations regarding the '466 Patent.

88.     A judicial declaration is necessary and appropriate so that Nexon may ascertain its rights regarding the '466 Patent.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgement of Invalidity of the '466 Patent)

89.      Nexon incorporates by reference its allegations contained in each of the preceding

paragraphs of this Complaint as though fully set forth herein.

90.      Upon information and belief, Uniloc contends all claims of the '466 Patent are

valid.

91.      All claims of the '466 Patent are invalid for failure to comply with one or more of

the conditions for patentability set forth in Title 35 of the United States Code, including without

limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

92.      The '466 Patent does not claim patent-eligible subject matter under 35 U.S.C.

§ 101.  The '466 Patent does not describe any new solution, system or device.  Its claims are

directed to the abstract idea of providing a user a desktop interface for user selection of application

program(s).  In fact, in *Uniloc USA et al. v. ADP, LLC et al.*, Case No. 2:16-cv-00741-RWS

(E.D. Tex.) Dkt. No. 267 at 25, the district court found that claims 3–5, 8, 9, 13, 15-20, 22–24,

28-33, 35–37, 41 and 42 of the '466 Patent to be "drawn to ineligible subject matter and, therefore,

invalid."  This finding was affirmed by the Federal Circuit.  *Uniloc USA, Inc., v. ADP LLC*, Case

No. CAFC-18-1132 (Fed. Cir. May 24, 2019) Dkt. No. 98 at 3.  Neither the claims nor the

specification of the '466 Patent recite any technological inventive concept to transform that

abstract idea into a patent-eligible application.  The '466 Patent is directed to patent-ineligible

subject matter.

93.      The '466 Patent is also invalid under 35 U.S.C. § 112 for failing to provide an

enabling disclosure or adequate written description supporting its claims, as it provides no

special programming algorithm, or technology for implementing the limitations of the claims nor does it disclose the requisite structures for its numerous means-plus-function claim limitations.

94.     If the claims have the scope asserted by Uniloc, then the '466 Patent is also invalid as anticipated or rendered obvious under 35 U.S.C. §§ 102 and/or 103, in light of the prior art including, for example U.S. Patent No. 5,919,247 to Van Hoff, et al., (the "'247 Patent"), its inherent teachings, and the admitted prior art.  Indeed the Patent Trial and Appeal Board recently held that claims 1, 2 and 7-9 are unpatentable in view of the prior art after *inter partes* review.  *See Bitdefender, Inc. v. Uniloc USA, Inc.*, IPR2017-01315, Paper No. 24 (Oct. 25, 2018).

95.     An actual and justiciable controversy exists between Nexon and Uniloc as to the invalidity of the claims of the '466 Patent.

96.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Nexon requests that this Court enter a judgment that all claims of the '466 Patent are invalid pursuant to Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgement of Non-Infringement of the '766 Patent)

97.     Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

98.     Uniloc alleges in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No. 2:17-cv-00281-RWS (E.D. Tex.), that Nexon infringes one or more claims of the '766 Patent. Nexon incorporates by reference in its entirety the content of that Complaint, which is facially deficient in that it fails to articulate a factual basis for Uniloc's infringement contentions.

Among other things, it does not even purport to map Nexon's product to any elements of any asserted claim of the '766 Patent, making only a conclusory allegation of infringement. In addition, it levies facially defective allegations of liability under the doctrine of equivalents that rest on claim scope surrendered during patent prosecution and improperly captures material in the prior art.

99.     Nexon asserts that it does not infringe or contribute to any infringement of any claim of the '766 Patent either literally or under the doctrine of equivalents. Nexon further asserts that it has not and does not induce any infringement of any claim of the '766 Patent.

100.     The '766 Patent is directed to "methods, systems and computer program products . . . for management of license use for a [computer] network." '766 Patent at 5:38–40. The claims broadly relate to maintaining licensing information for multiple software at a central location; receiving a user request for the availability of a license for a particular software; determining whether a license is available for the user to access the particular software; and communicating the availability of the license to the user.

101.     Nexon does not directly, indirectly, literally or under the doctrine of equivalents, infringe the '766 Patent. For example, and without waiver of additional distinctions, Claim 1 requires "maintaining a license management policy information for a plurality of application programs at a license management server." Nexon does not determine license availability and does not limit the number of users that can play a game by the availability of licenses. Similarly, Nexon does not receive "a request for license availability" or provide any "unavailability indication to the client responsive to the selection if the license availability indicates that a license is not available" as required by Claim 1.

102.    Therefore, there exists a substantial controversy between Nexon and Uniloc and the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Nexon has not infringed any claim of the '766 Patent.

103.    An actual and justiciable controversy exists regarding the alleged infringement of the '766 Patent by Nexon.  Nexon accordingly requests a judicial determination of its rights, duties, and obligations regarding the '766 Patent.

104.    A judicial declaration is necessary and appropriate so that Nexon may ascertain its rights regarding the '766 Patent.

**EIGHTH CAUSE OF ACTION**

**(Declaratory Judgement of Invalidity of the '766 Patent)**

105.    Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

106.    Upon information and belief, Uniloc contends all claims of the '766 Patent are valid.

107.    All claims of the '766 Patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

108.    The '766 Patent does not claim patent-eligible subject matter under 35 U.S.C. § 101.  The '766 Patent does not describe any new solution, system or device.  Its claims are directed to the abstract idea of using license management policy information to decide whether a license is available to a user for an application program.  In fact, in *Uniloc USA et al. v. ADP, LLC et al.*, Case No. 2:16-cv-00741-RWS (E.D. Tex.) Dkt. No. 267 at 25, the district court found that claims 5, 7, 9, 11, 13, 15 and 17 of the '766 Patent are "drawn to ineligible subject matter

and, therefore, invalid." This finding was affirmed by the Federal Circuit. *Uniloc USA, Inc., v. ADP LLC*, Case No. CAFC-18-1132 (Fed. Cir. May 24, 2019) Dkt. No. 98 at 3. Neither the claims nor the specification of the '766 Patent recite any technological inventive concept to transform that abstract idea into a patent-eligible application. The '766 Patent is directed to patent-ineligible subject matter.

109. The '766 Patent is also invalid under 35 U.S.C. § 112 for failing to provide an enabling disclosure or adequate written description supporting its claims, as it provides no special programming, algorithm, or technology for implementing the limitations of the claims nor does it disclose the requisite structures for its numerous means-plus-function claim limitations.

110. If the claims have the scope asserted by Uniloc, then the '766 Patent is also invalid as anticipated or rendered obvious under 35 U.S.C. §§ 102 and/or 103, in light of the prior art including, for example U.S. Patent No. 5,708,709 to Rose, et al. (the "'709 Patent"), its inherent teachings and the admitted prior art.

111. The '709 Patent to Rose, titled "System and Method for Managing Try-and-Buy Usage of Application Programs," was filed on December 8, 1995. The lead inventor, John H. Rose of San Jose, California, assigned the '709 Patent to Sun Microsystems, Mountain View, California.

112. The '709 Patent either anticipates or renders obvious the claims of the '766 Patent. For example, the "method for management of license use for a network" required by Claim 1 of the '766 Patent is found in the '709 Patent teaching of a "system and method for managing the distribution of licensed application programs stored on a server over a distributed computer system" which "maintains control over the program even after the program has been

distributed to a client computer from a provider on an information server." '709 Patent at

Abstract. The '709 Patent also discloses "maintaining license management policy information

for a plurality of application programs at a license management server" required by Claim 1 of

the '766 Patent, teaching that "protection information may include license expiration date

verification, authorized user ID verification, and protection against decompilation and reverse

engineering by maintaining the program in an encrypted form until verification of the expiration

date and user identity are complete and the program is ready for decoding, loading into the client

computer CPU, and execution." '709 Patent at Abstract. If a computer "associated with the user

does not have the validly licensed or trial copy of the Application Builder, the client is prompted

to review the licensing terms and agree to the terms presented before a trial copy of the

Application Builder is generated and provided to the user." *Id*. at 9:21-34. The '709 Patent also

discloses "that the license management policy information includes at least one of a user identity

based policy, an administrator policy override definition, or a user policy override definition"

required by Claim 1 of the '766 Patent, teaching "protection information may include license

expiration date verification, authorized user ID verification, and protection against decompilation

and reverse engineering by maintaining the program in an encrypted form until verification of

the expiration date and user identity are complete and the program is ready for decoding, loading

into the client computer CPU, and execution." '709 Patent at Abstract. The '709 Patent also

discloses "receiving at the license management server a request for license availability of a

selected one of the plurality of application programs from a user at a client" required by Claim 1

of the '766 Patent, teaching that "[u]pon selecting an application program [] for downloading,

user will optionally be presented with a reminder that the requested program is made available to

the user for trial use only under conditions of the license agreement" and that "the acceptance of

the license is preferably made explicitly by an affirmative action by the user before the selected application program will be downloaded." '709 Patent at 7:8-26. The '709 Patent also discloses "determining the license availability for the selected one of the plurality of application programs for the user based on the maintained license management policy information" and "providing an unavailability indication to the client responsive to the selection if the license availability indicates that a license is not available for the user or an availability indication if the license availability indicates that a license is available for the user" required by Claim 1 of the '766 Patent, teaching license verification to determine license availability, which includes "reading the Application Program file by the Application Builder (Step 428), and then comparing the Licensee ID 184 in the file with a client ID (or a list of Client IDs) associated with the Application Builder that is licensed to the client computer (Step 430). It also includes comparing the License Termination Date 185 with the current date (i.e., the computer's ambient date) and verifying that the termination date 185 is later than the ambient date stored on the client computer (Step 432)." '709 Patent at 10:4-20.

113.    An actual and justiciable controversy exists between Nexon and Uniloc as to the invalidity of the claims of the '766 Patent.

114.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Nexon requests that this Court enter a judgment that all claims of the '766 Patent are invalid pursuant to Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

## NINTH CAUSE OF ACTION

### (Declaratory Judgement of Non-Infringement of the '228 Patent)

115.    Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

116.    Uniloc alleges in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No. 2:17-cv-00276-JRG (E.D. Tex.), that Nexon infringes one or more claims of the '228 Patent. Nexon incorporates by reference in its entirety the content of that Complaint, which is facially deficient in that it fails to articulate a factual basis for Uniloc's infringement contentions. Among other things, it does not even purport to map Nexon's product to any elements of any asserted claim of the '228 Patent, making only a conclusory allegation of infringement.  In addition, it levies facially defective allegations of liability under the doctrine of equivalents that rest on claim scope surrendered during patent prosecution and improperly captures material in the prior art.

117.    Nexon asserts that it does not infringe or contribute to any infringement of any claim of the '228 Patent either literally or under the doctrine of equivalents.  Nexon further asserts that it has not and does not induce any infringement of any claim of the '228 Patent.

118.    The '228 Patent is directed to a "method of applying service to a computer program that is to be executed at a remote location connected to a central computer site of a computer network."  '228 Patent, Claim 1.

119.    Nexon does not directly, indirectly, literally or under the doctrine of equivalents, infringe the '228 Patent.  For example, and without waiver of additional distinctions, Claim 1 requires "interactively receiving a request for a computer program service from a customer at a remote location interface with optional service incorporation instructions of the remote location

customer."  Nexon does not receive nor provide a customer with the ability to send "optional service incorporation instructions" as required by Claim 1.

120.    Therefore, there exists a substantial controversy between Nexon and Uniloc and the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Nexon has not infringed any claim of the '228 Patent.

121.    An actual and justiciable controversy exists regarding the alleged infringement of the '228 Patent by Nexon.  Nexon accordingly requests a judicial determination of its rights, duties, and obligations regarding the '228 Patent.

122.    A judicial declaration is necessary and appropriate so that Nexon may ascertain its rights regarding the '228 Patent.

## TENTH CAUSE OF ACTION

### (Declaratory Judgement of Invalidity of the '228 Patent)

123.    Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

124.    Upon information and belief, Uniloc contends all claims of the '228 Patent are valid.

125.    All claims of the '228 Patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

126.    The '228 Patent does not claim patent-eligible subject matter under 35 U.S.C. § 101.  The '228 Patent does not describe any new solution, system or device.  Its claims are directed to the abstract idea of providing customized service to customers at a central site.  In fact, in *Uniloc USA et al. v. Big Fish Games, Inc.*, Case No. 2:17-cv-01183-RAJ (W.D. Wash.)

Dkt. No. 55 at 13, the district court found the claims of the '228 to be "directed to a patent-ineligible abstract idea" and thus invalid.  Neither the claims nor the specification of the '228 Patent recite any technological inventive concept to transform that abstract idea into a patent-eligible application.  The '228 Patent is directed to patent-ineligible subject matter.

127.    The '228 Patent is also invalid under 35 U.S.C. § 112 for failing to provide an enabling disclosure or adequate written description supporting its claims, as it provides no special programming algorithm, or technology for implementing the limitations of the claims nor does it disclose the requisite structures for its numerous means-plus-function claim limitations.

128.    If the claims have the scope asserted by Uniloc, then the '228 Patent is also invalid as anticipated or rendered obvious under 35 U.S.C. §§ 102 and/or 103, in light of the prior art including, for example U.S. Patent No. 5,619,716 to Nonaka, et al. (the "'716 Patent"), its inherent teachings and the admitted prior art.

129.    The '716 Patent to Nonaka, titled "Information Processing System having a Configuration Management System for Managing the Software of the Information Processing System," was filed on June 6, 1995.  The lead inventor of the '716 Patent, Naomichi Nonaka of Kawasaki, Japan assigned the '716 Patent to Hitachi, Ltd., of Tokyo, Japan.

130.    The '716 Patent either anticipates or renders obvious the claims of the '228 Patent.  For example the "method of applying service to a computer program that is to be executed at a remote location connected to a central computer site of a computer network" required by Claim 1 of the '228 Patent is found in the '716 Patent teaching of a "system in which update processes are automated in conformity with types of client machines . . . within which redirectors of identical version are run at any time, to thereby prevent any error ascribable to different programs from occurring" and "[w]hen a redirector stored in the client machine is

started, it notifies version information of its own to a configuration management program stored in a server machine." '716 at Abstract. The '716 Patent also discloses "interactively receiving a request for a computer program service from a customer at a remote location interface with optional service incorporation instructions of the remote location customer" required by Claim 1 of the '228 Patent, teaching "when the redirector recognizes the generation of the access request to the server, the version of the redirector is checked . . . [i]f the version is old, the version is updated." '716 Patent at 3:66-4:2. The '716 Patent also discloses "providing the received request for service over the computer network to a service facility at the central computer site" and "determining the components of the requested service at the central computer site" required by Claim 1 of the '228 Patent, teaching "[t]he configuration management routine stored in the server 10 has a copy of the redirector 27. In response to an inquiry made by the redirector update routine on the client 20 side, the configuration management routine compares the notified version with the version of its own redirector 27 and sends the result of the comparison back to the client 20 side." '716 Patent at 7: 7-14. The '716 Patent also discloses "providing the results of the requested service over the computer network back to the customer at the remote location interface" required by Claim 1 of the '228 Patent, teaching "[w]hen the update operation is necessary, the newest version of the redirector 27 is transferred from the server 10 and is stored in the disk storage 25 at step 2716. Subsequently, the routine proceeds to a step 2717, at which a message having contents: 'Redirector has been updated. Please restart.' Is displayed." '716 Patent at 8:43-49.

131. An actual and justiciable controversy exists between Nexon and Uniloc as to the invalidity of the claims of the '228 Patent.

132.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*,

Nexon requests that this Court enter a judgment that all claims of the '228 Patent are invalid

pursuant to Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101,

102, 103, and/or 112.

## ELEVENTH CAUSE OF ACTION

### (Declaratory Judgement of Non-Infringement of the '229 Patent)

133.     Nexon incorporates by reference its allegations contained in each of the preceding

paragraphs of this Complaint as though fully set forth herein.

134.     Uniloc alleges in *Uniloc USA, Inc., et. al. v. Nexon America, Inc.*, Case No.

2:17-cv-00276-JRG (E.D. Tex.), that Nexon infringes one or more claims of the '229 Patent.

Nexon incorporates by reference in its entirety the content of that Complaint, which is facially

deficient in that it fails to articulate a factual basis for Uniloc's infringement contentions.

Among other things, it does not even purport to map Nexon's product to any elements of any

asserted claim of the '229 Patent, making only a conclusory allegation of infringement.  In

addition, it levies facially defective allegations of liability under the doctrine of equivalents that

rest on claim scope surrendered during patent prosecution and improperly captures material in

the prior art.

135.     Nexon asserts that it does not infringe or contribute to any infringement of any

claim of the '229 Patent either literally or under the doctrine of equivalents.  Nexon further

asserts that it has not and does not induce any infringement of any claim of the '229 Patent.

136.     The '229 Patent is directed to a "method and system of moving or copying data

within a data processing system."  '229 Patent at 1:5-9.

137.    Nexon does not directly, indirectly, literally or under the doctrine of equivalents, infringe the '229 Patent.  For example, and without waiver of additional distinctions, Claim 1 requires "pausing the copying in response to a user requesting a pause operation from a user interface, wherein the computer system is available for other processing operations following the pausing."  Nexon does not pause a copying operation as is required by Claim 1.  Nexon Pause and Resume functions are not carried out in the manner claimed by the '229 Patent.

138.    Therefore, there exists a substantial controversy between Nexon and Uniloc and the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Nexon has not infringed any claim of the '229 Patent.

139.    An actual and justiciable controversy exists regarding the alleged infringement of the '229 Patent by Nexon.  Nexon accordingly requests a judicial determination of its rights, duties, and obligations regarding the '229 Patent.

140.    A judicial declaration is necessary and appropriate so that Nexon may ascertain its rights regarding the '229 Patent.

## TWELFTH CAUSE OF ACTION

### (Declaratory Judgement of Invalidity of the '229 Patent)

141.    Nexon incorporates by reference its allegations contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

142.    Upon information and belief, Uniloc contends all claims of the '229 Patent are valid.

143.    All claims of the '229 Patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

144.    The '229 Patent does not claim patent-eligible subject matter under 35 U.S.C. § 101.  The '229 Patent does not describe any new solution, system or device.  Its claims are directed to the abstract idea of copying information from one location to another, pausing the copying of information so that other tasks may be performed, and resuming the copying of that information.  *See Uniloc USA et al. v. Big Fish Games, Inc.*, Case No. 2:17-cv-01183-RAJ (W.D. Wash.) Dkt. No. 55 at 10 (finding the claims of the '229 to be invalid because they are "directed to a patent-ineligible abstract idea" and granting defendant's motion to dismiss).  Neither the claims nor the specification of the '229 Patent recite any technological inventive concept to transform that abstract idea into a patent-eligible application.  The '229 Patent is directed to patent-ineligible subject matter.

145.    The '229 Patent is also invalid under 35 U.S.C. § 112 for failing to provide an enabling disclosure or adequate written description supporting its claims, as it provides no special programming algorithm, or technology for implementing the limitations of the claims nor does it disclose the requisite structures for its numerous means-plus-function claim limitations.

146.    If the claims have the scope asserted by Uniloc, then the '229 Patent is also invalid as anticipated or rendered obvious under 35 U.S.C. §§ 102 and/or 103, in light of the prior art.  Indeed the Patent Trial and Appeal Board recently held that claims 1-5 and 7-9 are unpatentable in view of the prior art after *inter partes* review.  *See Unified Patents, Inc. v. Uniloc 2017 LLC*, IPR2017-02148, Paper No. 74 (April 11, 2019).

147.    An actual and justiciable controversy exists between Nexon and Uniloc as to the invalidity of the claims of the '229 Patent.

148.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Nexon requests that this Court enter a judgment that all claims of the '229 Patent are invalid

pursuant to Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

**PRAYER FOR RELIEF**

WHEREFORE, Nexon respectfully requests that this Court enter judgment in its favor and against Uniloc as follows:

A.   A declaration that Nexon's technology is not covered by any claim of the '578 Patent and that Nexon does not infringe any claim of the '578 Patent;

B.   A declaration that no claim of the '578 Patent constitutes patentable subject matter;

C.   A declaration that each claim of the '578 Patent is invalid;

D.   A declaration that Nexon's technology is not covered by any claim of the '293 Patent and that Nexon does not infringe any claim of the '293 Patent;

E.   A declaration that no claim of the '293 Patent constitutes patentable subject matter;

F.   A declaration that each claim of the '293 Patent is invalid;

G.   A declaration that Nexon's technology is not covered by any claim of the '466 Patent and that Nexon does not infringe any claim of the '466 Patent;

H.   A declaration that no claim of the '466 Patent constitutes patentable subject matter;

I.   A declaration that each claim of the '466 Patent is invalid;

J.   A declaration that Nexon's technology is not covered by any claim of the '766 Patent and that Nexon does not infringe any claim of the '766 Patent;

K.   A declaration that no claim of the '766 Patent constitutes patentable subject matter;

L.   A declaration that each claim of the '766 Patent is invalid;

M.   A declaration that Nexon's technology is not covered by any claim of the '228 Patent and that Nexon does not infringe any claim of the '228 Patent;

N.   A declaration that no claim of the '228 Patent constitutes patentable subject matter;

O.   A declaration that each claim of the '228 Patent is invalid;

P.      A declaration that Nexon's technology is not covered by any claim of the '229 Patent and that Nexon does not infringe any claim of the '229 Patent;

Q.      A declaration that no claim of the '229 Patent constitutes patentable subject matter;

R.      A declaration that each claim of the '229 Patent is invalid;

S.      A declaration that Nexon's case against Uniloc is an exceptional case within the meaning of 35 U.S.C. § 285;

T.      An award of costs and attorneys' fees to Nexon; and

U.      Such other and further relief as the Court deems just and reasonable.

## JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Nexon hereby demands a trial by jury of all issues triable before a jury.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Charlene M. Morrow
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
(650) 988-8500

By:  */s/ Philip A. Rovner*
       Philip A. Rovner (#3215)
       Jonathan A. Choa (#5319)
       Hercules Plaza
       P.O. Box 951
       Wilmington, DE  19899
       (302) 984-6000
       provner@potteranderson.com
       jchoa@potteranderson.com

Dated:   June 14, 2019                    *Attorneys for Plaintiff Nexon America, Inc.*